[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16239

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 8, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-10930 CV-JEM

MIAMI-DADE COUNTY, FLORIDA,
a political subdivision of the State of Florida,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(May 8, 2006)**

Before ANDERSON, FAY and SILER*, Circuit Judges.

PER CURIAM:

_____
*Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

This is an appeal from the United States District Court for the Southern District of Florida. It concerns the United States's purported obligation to reimburse Miami-Dade County, Florida ("the County") for the cost of treating the soil and groundwater contamination affecting the Miami International Air Depot. ("The Depot"). The County sued the United States pursuant to CERCLA, 42 U.S.C. § 9607(a)(2), *et. seq.*, and the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(b)(2)(B). We affirm the district court's decision that the United States has no obligation to reimburse the County for its cleanup costs.

I.    BACKGROUND

The County owns the Miami International Airport, which includes the Depot. From 1943 to 1966, the United States maintained and repaired Air Force aircraft engines at the Depot. From 1943 to 1948, it owned the Depot itself and after it passed title to the County, it subsequently leased back various Depot buildings from the County. Another tenant on the Depot was Aerodex, a company that cleaned aircraft engines for commercial airlines and the Air Force. It went bankrupt in 1976. In 1988, the EPA issued a report detailing the level of environmental damage the Airport's soil and groundwater had suffered as a result of the disposal of trichloroethylene (TCE) and other chlorinated solvents that Aerodex had used to clean engines. Pursuant to a 1998 consent order with the

2

Florida Department of Environmental Protection, the County admitted liability for the contamination. In 2001, the County sued the United States for contribution of cleanup costs.

Following a sixteen day bench trial, the district court found in favor of the United States on all counts. In support of its decision, the district court made extensive findings of fact. Most importantly, it found that none of the contaminants in the Depot could have resulted from the United States' activities on the Depot during the period in question.

II.     DISCUSSION

On appeal, the County makes the following arguments in favor of having the United States share cleanup costs. First, it contends that the United States' admission during trial that it was a "former owner" of the Depot for the purposes of CERCLA liability necessarily requires contribution from the United States. Second, it asserts that the United States faces "arranger liability" under CERCLA because, even if it did not pollute the site, it procured services from an entity that did, Aerodex. Finally, the County argues that the United States' tenure on the site prohibits it from invoking sovereign immunity and makes the United States susceptible to Florida environmental laws pursuant to the RCRA. We discuss each in turn.

A. Did the District Court Fail to Credit Properly the United States' Admission that It Was a "Former Owner" of the Depot when Determining the United States' Potential Contribution under CERCLA ?

Section 113(f) of CERCLA provides that a court "may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f). A plaintiff seeking contribution must prove both that the defendant is a liable party and must demonstrate how equitable factors weigh in favor of the defendant's contribution. See, e.g., Minyard Enterprises, Inc. v. Southeastern Chemical & Solvent Co., 184 F.3d 373, 385 (4th Cir. 1999). Even if a party is liable under CERCLA, a court may reasonably find that it should not pay contribution costs. See, e.g., Western Properties Service Corp. v. Shell Oil Co., 358 F.3d 678, 690 (9th Cir. 2004); Acushnet Co. v. Mohasco Corp., 191 F.3d 69, 78 (1st Cir. 1999).

The County makes a clever argument that the government's concession that it was a "former owner" relieved the County of proving both that there were releases of hazardous substances during the time that the property was owned by the United States, and also relieved the County of proving that such hazardous substances contributed to clean-up costs that it incurred. Whatever might be the case with respect to the former, the County is clearly wrong with respect to the

4

latter. As noted above, proof of a defendant's liability is necessary but not sufficient to compel the defendant's contribution. The concession of the United States clearly did not relieve the County of its burden of proving its entitlement to contribution.[1] It is also clear that the government's responsibility, or lack thereof, for the contamination is a relevant and appropriate factor in the equitable allocation inquiry. Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1514 n.32 (11th Cir. 1996) (noting that causation of contamination is "unquestionably an 'appropriate' factor for a court to consider in making a fair division of liability"). Thus, we readily conclude that the County's argument is without merit.

Moreover, after careful review of the arguments of the parties and the relevant parts of the record, we conclude that there is ample support for the district court's finding that there were no releases during the government's ownership of pollutants that contributed to the necessity for the subsequent clean-up. The district court found no evidence that the United States released TCE or any other chlorinated solvents during the Forties, when all maintenance and repairs were

---

[1] We also readily conclude that the County was not misled by the government's concession or the district court's ruling accepting same. It was clear from the district court's partial summary judgment ruling, from the relevant case law, and from the proceedings during the bench trial, that the County had the burden of proving its entitlement to contribution. It was also clear throughout the bench trial that issues relating to what substances, if any, were released or disposed of and whether they contributed to the need for remediation were both relevant and hotly disputed.

performed by the Air Force, rather than outside contractors. Moreover, the district court found that even if such solvents had been used, they could not have helped cause the contamination at issue because the length of time meant that the solvents would have either degraded into harmless compounds or that the groundwater would have carried solvent deposits in the other direction and far from the Depot.

Likewise, the district court found no evidence that once the Air Force outsourced some of its maintenance and repair operations to Aerodex, the Air Force itself released any chlorinated solvents onto the site. We conclude that the district court neither abused its discretion nor committed any clear errors of fact when it decided that the United States should not have to contribute to the costs of cleanup.

B.    Is the United States an "Arranger" for the Purposes of CERCLA?

While there is no evidence that the United States released chlorinated solvents onto the site, the parties agree that Aerodex did. The County claims that the United States should be held responsible for Aerodex's actions.

CERCLA allows suits against "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by

6

such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances[.]" 42 U.S.C. § 9607(a)(3). In determining whether a party arranged for the disposal or treatment of hazardous substances, "[r]elevant factors include: (1) whether a sale involved the transfer of a "useful" or "waste" product; (2) whether the party intended to dispose of a substance at the time of the transaction; (3) whether the party made the "crucial decision" to place hazardous substances in the hands of a particular facility; (4) whether the party had knowledge of the disposal; and (5) whether the party owned the hazardous substances." Concrete Sales and Services, Inc. v. Blue Bird Body Co., 211 F.3d 1333, 1336-37 (11th Cir. 2000).

The County makes a conclusory argument that the United States should be liable as an "arranger" pursuant to 42 U.S.C. § 9607(a)(3), and that such liability should somehow affect the equitable allocation that the district court denied the County. In this regard, the County does not challenge the extensive findings of fact of the district court to the effect that the contamination requiring the remediation expenditures was caused by the disposal of volatile organic compounds, including primarily TCE, and findings to the effect that the Government had no authority with respect to or management responsibility with respect to Aerodex's operation

7

and in particular with respect to Aerodex's waste disposal activities. Indeed, the district court found that such waste disposal activities were governed solely by Aerodex and the County. The County's conclusory assertion that there were other hazardous substances which also contributed to the necessity for the remediation work and with respect to which the Government may have had more responsibility is wholly unpersuasive as an effort to demonstrate clear error. We cannot conclude that the district court's extensive findings of fact are clearly erroneous or that it abused its discretion in concluding that the United States was not an "arranger."

   C. <u>Did the United States Waive Its Sovereign Immunity Rendering It Susceptible to Suits Pressing State Law Claims?</u>

The County identifies three potential grounds for the United States' jurisdiction over the Depot: its tenure on the site, from 1943 to 1966; the Defense Environmental Restoration Program Act (DERPA); and its 1948 quitclaim deeds. We agree with the district court that none of these grounds suffice to establish jurisdiction.

RCRA provides that if the federal government "ha[s] jurisdiction over any solid waste management facility or disposal," it waives its sovereign immunity against lawsuits alleging that the maintenance of the facility or disposal has failed

8

to comply with state environmental laws. 42 U.S.C. § 6961(a). The district court rejected the argument that the United States' tenure on the site could constitute jurisdiction because the court understood "jurisdiction" to mean "current legal control or power." Without challenging the district court's holding that the jurisdiction must be current, the County quibbles over the district court's definition of "jurisdiction" as meaning legal control or power. The County argues that the proper meaning should be "the right to say or the power to act." We reject the County's argument as unhelpful; the United States in the instant case has neither "legal control or power" nor "the right to say or the power to act."

In addition, the County argues that the Defense Environmental Restoration Program Act (DERPA) somehow operates to waive the Government's sovereign immunity and subject it to suit by the County pursuant to state law. The County's brief is vague and conclusory. The County quotes from 10 U.S.C. § 2701(b)(1) that "[t]he Secretary of Defense shall carry out a program of environmental restoration at facilities under the jurisdiction of the Secretary." Among other flaws in the County's argument, the County fails to explain how even mandatory language directed to the Secretary of Defense could operate to waive the sovereign immunity of the United States and subject it to suit by the County pursuant to state law. We find the County's argument wholly without merit.

We find no error in the district court's ruling under Florida real estate law that the United States has no title or ownership interest pursuant to the 1948 quitclaim deeds. Moreover, we are confident that even if the interests retained in the 1948 quitclaim deeds have not been fully relinquished as the government contends, any such remote and contingent interests would not constitute "having jurisdiction over any ... disposal site" which might trigger the sovereign immunity waiver provision.

III.  CONCLUSION

The judgment of the district court is

AFFIRMED.